IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Builders Mutual Insurance Company, | ) | C/A No.: 2:07-1890-JFA |
| Plaintiff, | ) | |
| vs. | ) | |
| R Design Construction Company, LLC, a/k/a R Design Construction Co., LLC, a/k/a R. Design Construction Co.; Carl Aten, Jr., individually and in his various capacities as Principal and Agent of, as Successor to, and as Liquidating Trustee of R Design Construction Company, LLC a/k/a R Design Construction Co., LLC, a/k/a R Design Construction Co.; and 16 Jade Street, LLC, | ) | ORDER |
| Defendants. | ) | |

This is a declaratory judgment action regarding insurance coverage. Builders Mutual Insurance Company seeks a declaration concerning its rights and obligations pursuant to a commercial general liability (CGL) policy. The parties have filed cross-memoranda in support of judgment. After considering the written materials submitted and the arguments of counsel, the court concludes that the CGL policy does not provide coverage.

I.  **Factual and Procedural Background**

On July 27, 2004, R Design Construction (general contractor) and 16 Jade Street LLC (owner) entered into a contract in which R Design agreed to supervise the construction of a multi-story, four-family condominium on Lady's Island in Beaufort, South Carolina. R Design hired several subcontractors to do the work. One of those subcontractors was Catterson & Sons Construction. Catterson & Sons was hired to frame the building, felt the

roof, apply Tyvex wrap, set exterior windows and doors, and build decking and stairs. Construction began in September.

Approximately six months into construction, the owner asked the engineer-of-record to inspect the project and to determine whether the structure complied with the plans and specifications. In a report dated April 1, 2005, the engineer identified four defects. The defects included improper spanning of the garage floor framing, improper substitution of steel beams for load-bearing walls, lack of a continuous beam at the top of the steel columns, and lack of a continuous header over the shearwalls. The engineer concluded that there were several changes made to the framing plan without approval. The report goes on to say that repairs "must be completed to restore the framing back to the original design intent."

Three months later, in July 2005, Catterson & Sons either quit or was fired. Thereafter, on October 17, 2005, R Design either quit or was fired. Between July and October, R Design did not hire a subcontractor to replace Catterson & Sons or to correct the faulty work. Following R Design's departure, the engineer-of-record performed a second inspection, this time finding thirty-eight defects. The defects included the four defects found in the first inspection, which had not been addressed, and thirty-four additional defects, most of which related to the framing. A third inspection performed by the general contractor that replaced R Design revealed sixty defects.

As a result of the defective work, Jade Street commenced a lawsuit in state court against R Design and its principal, Carl Aten, and against Catterson & Sons and its principal, Michael S. Catterson. R Design cross-claimed against Catterson & Sons.

Thereafter, on July 9, 2007, Builders Mutual brought a declaratory judgment action in this court, seeking, among other things, a declaration that the CGL policy issued to R Design does not provide coverage for the construction defects complained of and does not require Builders Mutual to indemnify R Design. After the expiration of all pre-trial deadlines, the parties requested a stay pending a ruling from the South Carolina Supreme Court in a case titled *Auto Owners Ins. Co. v. Newman*. The court granted the request. On September 8, 2009, the day the *Newman* decision was issued, the court lifted the stay and restored the case to the active docket, advising the parties to prepare for the November/December 2009 term of court.

Thereafter, on September 28, 2009, Builders Mutual filed a motion for summary judgment against all defendants. The court denied the motion as untimely because it was filed after the expiration of the dispositive motions deadline set forth in the scheduling order. The court directed the parties to file memoranda in support of judgment by November 4, 2009, with responses due on November 16, 2009. A hearing was conducted on May 6, 2010. In the meantime, the state court issued its ruling on the merits of the construction claims.

    A.    **The state-court action**

On October 14, 2009, following a three-day bench trial, the state court entered judgment in favor of Jade Street, awarding $911,296 in repair costs and $14,260 in engineering costs and other fees, to be assessed jointly and severally among the defendants. The court also awarded R Design $925,556 ($911,296 + $14,260) on its cross-claim against Catterson & Sons.

The trial court found that the following defects were directly attributable to the negligence of Catterson & Sons:

1. Excessive cuts made in the bond beams throughout the project;
2. Inadequate wall reinforcement in the aerated autoclave concrete block (AAC block) walls throughout the project;
3. Inadequate bearing of the lintels above window and door penetrations in the AAC block walls throughout the project;
4. Inadequate mortar beds in the AAC block walls throughout the project;
5. Improper installation of the garage floor trusses;
6. Improper installation of the Simpson foundation straps;
7. Improper cutouts in the AAC block walls compromising their structural integrity;
8. Improper installation of the structural steel framing and supports throughout the project;
9. Improper installation of firewalls;
10. Improper nailing and installation of the exterior siding;
11. Improper mechanical run cuts in the steel beams throughout the project;
12. Improper deletion and/or substitution of load bearing components in the project, reducing the structural integrity and load capacity of the footings and other load carrying components;
13. Improper construction and reinforcement of the CMU block walls;
14. Improper installation of the AAC floor panel system;
15. Improper installation of horizontal beam headers at the front porches;
16. Improper balloon framing at gable end walls;
17. Improper fastening of the laminated veneer lumber (LVL) beams;
18. Improper lapping of double top plates;
19. Omission of bird mouth cuts in the roof rafters;
20. Improper penetration of the fire-rated floor system with plastic electrical conduit in violation of the applicable building code;
21. Improper omission of collar ties in the roof framing;
22. Improper use of OSB sheathing as filler material for oversized window openings;
23. Improper omission of horizontal bridging or x-bracing at the floor trusses;
24. Improper spacing of anchor bolts at the top of AAC walls;
25. Improper seating of floor trusses on bearing walls at the support ends of the trusses;
26. Improper substitution of LVL beams for steel support beams in violation of the plans and specifications;
27. Excessive cutting of LVL beams;

28. Improper omission of hurricane clips;
29. Improper omission of shear walls;
30. Improper omission of anchor bolts;
31. Improper support of the ceiling system to meet seismic load requirements per the applicable building code.

The trial court also found that damage occurred to the structure after Catterson & Sons and R Design stopped working on the project. The framing began to fail. The LVL beams that ran perpendicular to the floor were insufficient to support the loads imposed on them, which in turn caused the floor to sag. Water intrusion and exposure to the elements resulted in deterioration of the sheathing and framing.

**B.     The CGL policy**

Under the CGL policy that Builders Mutual issued to R Design, Builders Mutual agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." Policy § I, ¶ 1.a. Additionally, Builders Mutual had "the right and duty to defend the insured against any 'suit' seeking those damages." *Id.*

The insurance policy provides coverage for "property damage" caused by an "occurrence." Policy § I, ¶ 1.b. The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Policy § V, ¶ 17.a. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy § V, ¶ 13. Although the policy does not define "accident," South Carolina courts have defined "accident" as an "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful

5

result, not intended or designed by the person suffering the harm or hurt." *Auto Owners Ins. Co., Inc. v. Newman*, 684 S.E.2d 541, 543 (S.C. 2009).

### 1. Exclusions

The policy contains numerous exclusions. One of the exclusions is the "your work" exclusion. This exclusion reads as follows:

> l. Damage to Your Work
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Policy § I, ¶ 2.l. "Your work" means "[w]ork or operations performed by you or on your behalf . . . ." Policy § V, ¶ 22.a.1.

The "products-completed operations hazard" includes:

> all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned.

Policy § V, ¶ 16.a.

### 2. Endorsements

The policy also contains several endorsements. One of the endorsements is referred to as the CG 22 94 10 01 (or CG 2294) endorsement. This endorsement replaces the "your

work" exclusion quoted above, omitting the reference to work performed by a subcontractor. The endorsement reads:

> l.  Damage to Your Work
>
> > "Property damage" to "your work" arising out of it or any party of it and included in the "products-completed operations hazard."

The policy also contains an endorsement prohibiting coverage for property damage related in any way to fungus, mold, mildew, mycotoxins, or resulting allergens.

## II.  Legal Standard

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a) (2010). "This power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). "[A] federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (ii) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

The Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for which coverage is sought." *Nautilus*, 15 F.3d

at 375-76. "[W]hen an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts, considerations of federalism, efficiency, and comity should also figure into the discretionary balance, and may, in certain circumstances, require the federal court to refuse to entertain the action, when the declaratory relief sought would serve a useful purpose." *Id.* at 376. Additional considerations include: "(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward will result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law.'" *Id.* at 377 (internal citations omitted). The court should also consider whether the declaratory judgment action is being used for "procedural fencing," that is, to obtain a hearing in federal court in a case that otherwise would not be removable. *Id.*

Having considered the principles and factors outlined above, the court concludes that it is appropriate to issue a declaratory judgment in this case. A decision from this court will clarify and settle the legal relations at issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. The court is also persuaded that the legal issues presented in this case have been settled by state law,[1] and that

---

[1] There are multiple district court cases that have applied the state law affecting the outcome in this case. *E.g.*, *Builders Mut. v. Kalman Builders Mut. Ins. Co. v. Kalman*,

8

in the interest of efficiency and judicial economy, this matter should be resolved now, in this court, where the matter has been pending since 2007, rather in the state court, where the merits of the underlying case have already been decided. Finally, no party has objected to the court exercising its discretion under the Declaratory Judgment Act.

**III. Law and Analysis**

**A. Law**

"A CGL policy in the home construction industry is designed to cover the risks faced by homebuilders when a homeowner asserts a *post-construction claim* against the builder for damage to the home caused by alleged construction defects." *Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 545 (S.C. 2009) (emphasis added). It "'is not intended to insure business risks, *i.e.*, risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.'" *Century Indem. Co. v. Golden Hills Home Builders, Inc.*, 561 S.E.2d 335, 358 (S.C. 2002) (quoting Roland H. Long, LL.M., *The Law of Liability Insurance*, § 3.06[1] (2001)). Such "'policies do not insure [an insured's] work itself, but rather, they generally insure consequential risks that stem from that work.'" *Id.*

"[F]aulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy." *L-J, Inc. v. Bituminous Fire*

---

2009 WL 4807003 (D.S.C. Dec. 8, 2009); *Jessco, Inc. v. Builders Mut. Ins. Co.*, 2009 WL 3065210 (D.S.C. Sept. 22, 2009); *Bituminous Cas. Corp. v. R.C. Altman Builders, Inc.*, 2006 WL 2137233 (D.S.C. July 28, 2006); *Bellino v. Scottsdale Ins. Co.*, 2006 WL 1129402 (D.S.C. Apr. 27, 2006).

*& Marine Ins. Co.*, 621 S.E.2d 33, 35 (S.C. 2005). The rationale behind this rule is that a CGL policy is not a performance bond. *Id.* at 36. It is an insurance policy, which is intended to insure against accidents. *Id.* But if the faulty workmanship causes damage to property other than the defective work product itself, there may be an "occurrence" triggering coverage. *Newman*, 684 S.E.2d at 544-45.

In *Newman*, a subcontractor negligently applied stucco to an otherwise sound structure. Shortly after the construction was completed, the homeowner filed a claim against the general contractor alleging that the negligently applied stucco allowed moisture to seep into the house, causing water damage to the home's exterior sheathing and wooden framing. *Id.* at 190, 684 S.E.2d at 542. The arbitrator ruled in favor of the homeowner. *Id.* Following arbitration, the insurance company filed a declaratory judgment action seeking a determination of the rights and obligations under the CGL policy issued to the general contractor. *Id.* at 190, 684 S.E.2d at 542-43. The trial court determined that the policy provided coverage because the damage complained of was caused by an occurrence. *Id.* at 190, 684 S.E.2d at 542-43. The supreme court agreed.

The supreme court found that there was property damage beyond the defective work product itself. *Id.* The court explained that "although the subcontractor's negligent application of the stucco does not on its own constitute an 'occurrence,'. . . the continuous moisture intrusion resulting from the subcontractor's negligence is an 'occurrence' as defined by the CGL policy." *Id.* The court further determined that "the continuous moisture intrusion into the home was 'an unexpected happening or event' not intended by [the general

10

contractor] – in other words, an 'accident' – involving 'continuous or repeated exposure to substantially the same harmful conditions.'" *Id.* at 544-45. As a result, the court held that "the subcontractor's negligence resulted in an 'occurrence' falling within the CGL policy's initial grant of coverage for the resulting 'property damage' to the home's framing and exterior sheathing." *Id.* at 545.

**B.     Analysis**

Builders Mutual contends that the CGL policy in this case does not provide coverage because the construction defects are a result of faulty workmanship, and faulty workmanship standing alone does not constitute an occurrence. Builders Mutual also contends that faulty workmanship is an ordinary business risk that the policy was not intended to cover. Finally, Builders Mutual contends that the policy's various exclusions and endorsements prohibit coverage.

R Design and 16 Jade Street contend, on the other hand, that the policy provides coverage because the faulty workmanship resulted in damage to other parts of the structure. R Design and 16 Jade Street also contend that the "your work" exclusion and the CG 2294 endorsement do not eliminate coverage because R Design was hired only to supervise the project, and Catterson & Sons performed work on behalf of the owner, and not on behalf of R Design.

The court concludes that the insurance policy does not provide coverage. There has been no "property damage" caused by an "occurrence." The alleged property damage relates primarily to faulty workmanship. The trial court found that the project had thirty-one defects

11

before R Design and Catterson & Sons left. Standing alone, such faulty workmanship does not constitute an occurrence. *See L-J*, 621 S.E.2d at 35 ("[F]aulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy.").

To the extent that the faulty workmanship caused damage to other parts of the structure, the court finds that the damage was not caused by an occurrence. According to the defendants, the defective installation of the LVL beams resulted in the crushing of the walls and wall components, the deformation of the flooring truss system, and moisture intrusion, rot, and mold. But this damage was not caused by an "occurrence." Numerous defects were discovered early in the construction process and could have been corrected before the project was completed. The defendants knew that the LVL beams did not comply with the plans, and should have known that if left uncorrected, damage could occur. There was nothing accidental or unexpected about what happened to other parts of the structure, if anything. To permit coverage under these facts would encourage general contractors to avoid or to prolong correction of faulty work discovered during the construction process. This is contrary to the very purpose of CGL policies, which is to cover the risks faced when a homeowner asserts a post-construction claim. *See, e.g., Newman*, 684 S.E.2d at 545 ("A CGL policy in the home construction industry is designed to cover the risks faced by homebuilders when a homeowner asserts a *post-construction claim* against the builder for damage to the home caused by alleged construction defects.") (emphasis added). *See also Century Indem. Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355, 359 (2002) (finding no

coverage for property damage that arose out of faulty work that had not yet been completed).

Because there has not been any property damage caused by an occurrence, the court concludes that the policy does not provide coverage. Given this conclusion, the court does not need to address whether the various exclusions and endorsements also operate to prohibit coverage.

## IV. Conclusion

For the reasons set forth above, the court declares that the policy issued by Builders Mutual does not provide coverage and that Builders Mutual does not have a duty to indemnify R Design. There has been no property damage caused by an occurrence. The damage was to the work product itself and was a result of faulty workmanship. To the extent that there was property damage to other parts of the structure, the damage was not caused by occurrence.

IT IS SO ORDERED.

*[signature: Joseph F. Anderson, Jr.]*

May 21, 2010  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge